Amber M. Spataro, Esq. (036892008)
Jennifer I. Fischer, Esq. (047432013)
**LITTLER MENDELSON P.C.**
One Newark Center, 8th Floor
Newark, New Jersey  07102
973.848.4700
Attorneys for Defendants
*Skanska USA, Inc. and Skanska USA Building Inc.*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLANTIC NEUROSURGICAL SPECIALISTS and ATLANTIC SHORE SURGICAL ASSOCS., PC, | Civil Action No.   2:21-cv-20052 |
| Plaintiffs, | |
| vs. | **NOTICE OF REMOVAL (FEDERAL QUESTION)** |
| ANTHEM, INC., d/b/a Anthem Blue Cross Blue Shield, f/k/a WellPoint, Inc.; ANTHEM INS. COS., INC., d/b/a Anthem Blue Cross Blue Shield; ANTHEM LIFE INS., d/b/a Anthem Blue Cross and Blue Shield; ANTHEM BLUE CROSS LIFE & HEALTH INC. CO.; BLUE CROSS OF CALIFORNIA, d/b/a Anthem Blue Cross; COMMUNITY INS. CO., d/b/a Anthem Blue Cross Blue Shield; ANTHEM HEALTH PLANS OF VIRGINIA, INC., d/b/a Anthem Blue Cross and Blue Shield; ANTHEM UM SERVS., INC., d/b/a Anthem Blue Cross and Blue Shield; HIGHMARK BLUE CROSS BLUE SHIELD DELAWARE, a/k/a Highmark Health Ins. Co.; SECURITAS SECURITY SERVS. USA, INC.; VERIZON, INC., a/k/a Verizon Benefits Admin., Inc., a/k/a Verizon N.J. Inc.; SKANSKA USA INC.; SKANSKA USA BLDG. INC.; SIGNET FIN. MGMT., LLC; CAMP SIX, INC.; SIEMENS INDUS. INC., a/k/a Siemens Corp., a/k/a Siemens Fin. Servs., Inc.; BAYER CORP.; PRIME HEALTH CARE SERVS.-ST. MICHAEL'S, LLC, d/b/a Saint Michael's Medical Center; PRIME HEAL TH-CARE SERVS.-ST. CLARE'S, LLC, d/b/a St. Clare's Health, a/k/a St. Clare's Hosp., Inc.; and ABC CORPS. l-100, | *Electronically Filed* |
| Defendants. | |

TO:    THE CLERK AND THE HONORABLE JUDGES
       OF THE UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF NEW JERSEY

Defendants, Skanska USA, Inc. and Skanska USA Building, Inc., ("Defendants"), by and through its undersigned counsel of record, files this Notice of Removal of the above-captioned action to the United States District Court for the District of New Jersey from the New Jersey Superior Court, Law Division, Morris County, where the action is now pending, as provided by Title 28, United States Code, Chapter 89 and states:

## STATE COURT ACTION

1.    Plaintiff Atlantic Neurosurgical Specialists and Atlantic Shore Surgical Associates, P.C. ("Plaintiffs") commenced this action in the Superior Court of New Jersey, Law Division, Morris County, by the filing of a Complaint on October 18, 2021, entitled *Atlantic Neurosurgical Specialists and Atlantic Shore Surgical Associates, P.C. v. Anthem, Inc., et al*, bearing Docket No. MRS-L-2172-21 ("the State Court Action"). The State Court Action is now pending in that court. Attached as **Exhibit A** is a copy of Plaintiffs' Complaint.

2.    On October 21, 2021, Defendants, were served with the Summons and Complaint. Attached as **Exhibit B** is a copy of the Service of Process Transmittal received by Skanska USA Inc., and Skanska USA Building, Inc.

3.    The above documents constitute all "process, pleadings and orders" served upon Defendant in the State Court Action, pursuant to 28 U.S.C. § 1446(a).

## TIMELINESS OF REMOVAL

4.    This Notice of Removal is timely filed within 30 days of October 21, 2021, as required by 28 U.S.C. § 1446(b)(3) ("notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of . . . other paper from which it may first be ascertained that the case is one which is or has become removable") and 28 U.S.C. § 1446(c)(3)(A) (responses to discovery shall be treated as an "other paper" under 28 U.S.C. § 1446(b)(3)).

5.     This notice of removal is also filed within one year of the commencement of the State Court Action and therefore is timely under 28 U.S.C. § 1446(c)(l).

## FEDERAL QUESTION JURISDICTION

6.     This Court has subject matter jurisdiction in this case based upon federal question jurisdiction.  28 U.S.C. §§ 1331, 1441(a) and (c).  Federal question jurisdiction exists in a civil matter when the "claim or right aris[es] under the Constitution, treaties or laws of the United States."  28 U.S.C. § 1441(c)(1)(A).

7.     A case arise[s] under federal law within the meaning of § 1331 . . . if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006).

8.     Federal question jurisdiction has been invoked in this case under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

9.     ERISA creates a comprehensive regulatory scheme for employee welfare benefit plans and provides the exclusive means by which a participant may bring a civil action to recover benefits, enforce rights, or clarify rights. *See e.g.*, *Bricklayers & Allied Craftsmen Int'l Union Local 33 Ben. Funds v. America's Marble Source*, 950 F.2d 114, 118 (3d Cir. 1991) (preempting a state law claim regulating how ERISA plans are funded); *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989) (claim for breach of contract arising out of employer's denial of severance benefits was preempted).

10.     ERISA preempts all state laws that "relate to" employee benefit plans, whether or not the state laws are designed to affect employee benefit plans because "Congress used the words 'relate to'…in their broad sense." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98 (1983).

11.     Although Plaintiffs' Complaint does not state a specific cause of action, Plaintiffs' Complaint clearly seeks to recover benefits allegedly due to Plaintiffs under the terms of the group benefits provided by Defendants and under the Policy insured by co-Defendants. *See Complaint,* ¶¶18, 26, 40-42; *see also* 29 U.S.C. § 1132(a)(1)(B).

12.     Plaintiffs seek to: (1) enforce their rights under the terms of the Policy, and (2) recover benefits allegedly due to them under the terms of the Policy. Accordingly, Plaintiffs' Complaint is within the scope of 29 U.S.C. § 1132(a) and is therefore preempted by ERISA. 29 U.S.C. § 1001, *et seq.; see also Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 67 (1987) (upholding removal when plaintiff who sued for wrongful termination, breach of contract, and retaliatory discharge, and demanded "all benefits and insurance coverages [sic] plaintiff is entitled to" was beneficiary under ERISA and could have brought his claim for benefits under ERISA's civil enforcement section).

13.     Although Plaintiffs have pled claims as separate breach of implied contract, breach of covenant of good faith and fair dealing, *quantum meruit*, promissory estoppel, negligent misrepresentation, and tortious interference with economic advantage (*see* Ex. A), those claims fit squarely within ERISA's enforcement provision at section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) (allowing a Participant in an ERISA plan to file suit seeking benefits under an ERISA Plan).

14.     Thus, the relief sought by Plaintiffs under state law would duplicate, supplement, and supplant the remedies available under ERISA. Plaintiffs' Complaint is completely pre-empted and converted into a single claim arising under section 502(a)(1)(B) of ERISA, such that removal to this Court is appropriate.

## **VENUE**

15.     The United States District Court for the District of New Jersey is the District Court of the United States within which Plaintiffs' state court action is currently pending.

16.     The Notice of Removal is being filed in the United States District Court for the District of New Jersey within 30 days of the date upon which Defendants were served with the Summons and Complaint, as required by 28 U.S.C. § 1446(b).  Attached as **Exhibit C** is a copy of the Notice of Filing of Notice of Removal to the Clerk of the New Jersey Superior Court, the original of which will be filed with the New Jersey Superior Court Clerk, Law Division, Morris County as required by 28 U.S.C. § 1446(d).

## OTHER DEFENDANTS

17.     Under 28 U.S.C. § 1446(b)(2)(A), all defendants who have been properly joined and served must join in or consent to the removal of the action.

18.     Defendants Anthem, Inc. d/b/a Anthem Blue Cross Blue Shield, f/k/a WellPoint, Inc., Anthem Ins. Cos., Inc., d/b/a Anthem Blue Cross and Blue Shield, Anthem Blue Cross Life & Health Inc. Co., Blue Cross of California d/b/a Anthem Blue Cross, Community Ins. Co., d/b/a Anthem Blue Cross Blue Shield, Anthem Health Plans of Virginia, Inc., d/b/a Anthem Blue Cross and Blue Shield (collectively "Anthem Defendants") consent to the removal of the above-captioned case.

19.     Upon information and belief, none of the other co-Defendants have been served in this case.  Therefore, the requirement for unanimous consent among served defendants has been met.

## RELIEF REQUESTED

20.     Defendants request that the United States District Court for the District of New Jersey assume jurisdiction over the above-captioned action and issue such further orders and processes as may be necessary to bring before it all parties necessary for the trial of this action.

**WHEREFORE**, Defendants respectfully request that the foregoing action be removed from the Superior Court of New Jersey, Law Division, Morris County, to the United States District Court for the District of New Jersey.

Dated: November 17, 2021                          Respectfully submitted,


                                                  */s/ Jennifer I. Fischer*
                                                  Amber M. Spataro, Esq.
                                                  Jennifer I. Fischer, Esq.
                                                  LITTLER MENDELSON P.C.

                                                  Attorneys for Defendants
                                                  *Skanska USA, Inc. and Skanska USA Building Inc.*

# EXHIBIT A

Eric D. Katz | Atty. No. 016791991
David M. Estes | Atty. No. 034532011
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: 973-228-9898
F: 973-228-0303
E: ekatz@mazieslater.com
*Co-Counsel for Plaintiffs*

Leslie S. Howard | Atty. No. 021551992
**COHEN HOWARD LLP**
766 Shrewsbury Ave., Suite 200
Tinton Falls, New Jersey 07724
T: 732-747-5202
F: 732-268-8362
E: lhoward@cohenhoward.com
*Co-Counsel for Plaintiffs*

ATLANTIC NEUROSURGICAL
SPECIALISTS and ATLANTIC SHORE
SURGICAL ASSOCS., PC,

      Plaintiffs,

v.

ANTHEM, INC., d/b/a Anthem Blue Cross Blue
Shield, f/k/a WellPoint, Inc.; ANTHEM INS. COS.,
INC., d/b/a Anthem Blue Cross Blue Shield;
ANTHEM LIFE INS. d/b/a Anthem Blue Cross and
Blue Shield; ANTHEM BLUE CROSS LIFE &
HEALTH INC. CO.; BLUE CROSS OF
CALIFORNIA, d/b/a Anthem Blue Cross;
COMMUNITY INS. CO., d/b/a Anthem Blue Cross
Blue Shield; ANTHEM HEALTH PLANS OF
VIRGINIA, INC., d/b/a Anthem Blue Cross and
Blue Shield; ANTHEM UM SERVS., INC., d/b/a
Anthem Blue Cross and Blue Shield; HIGHMARK
BLUE CROSS BLUE SHIELD DELAWARE, a/k/a
Highmark Health Ins. Co.; SECURITAS
SECURITY SERVS. USA, INC.; VERIZON, INC.,
a/k/a Verizon Benefits Admin., Inc., a/k/a Verizon
N.J. Inc.; SKANSKA USA INC.; SKANSKA USA
BLDG. INC.; SIGNET FIN. MGMT., LLC; CAMP
SIX, INC.; SIEMENS INDUS. INC., a/k/a Siemens
Corp., a/k/a Siemens Fin. Servs., Inc.; BAYER
CORP.; PRIME HEALTHCARE SERVS.–ST.
MICHAEL'S, LLC, d/b/a Saint Michael's Medical
Center; PRIME HEALTH-CARE SERVS.–ST.
CLARE'S, LLC, d/b/a St. Clare's Health, a/k/a St.
Clare's Hosp., Inc.; and ABC CORPS. 1-100,

      Defendants.

SUPERIOR COURT OF NEW JERSEY,
LAW DIVISION, MORRIS COUNTY

Dkt. No. MRS-L-_2172_-21

CBLP Action

# COMPLAINT &
# JURY DEMAND

Plaintiffs by way of Complaint against defendants, alleges as follows:

1.      Plaintiffs rendered emergency and pre-authorized, medically necessary surgical and other related medical services in New Jersey to patients who were members or dependents of members of healthcare plans sponsored, funded, insured and/or administered by Defendants. However, when it came time to pay Plaintiffs for the services rendered, Defendants issued grossly insufficient, partial payments (5¢ on the dollar), contrary to Defendants' duties under New Jersey common and statutory laws. Anthem, Inc. – the largest for-profit health insurer in the Blue Cross Blue Shield Association – is part of a family of companies with a net income of $551 million in 2021, whose executives average $7.7 million in compensation, and who has been fined over $600 million since 2000 for numerous legal and regulatory violations.[1]  This action is brought to hold Defendants accountable for the outstanding surgical and medical bills, rather than unlawfully shifting Defendants' financial responsibilities onto the patients of plaintiffs Atlantic NeuroSurgical Specialists and Atlantic Shore Surgical Associates.

**THE PARTIES**

A.      **Plaintiffs**

2.      Plaintiff Atlantic NeuroSurgical Specialists ("ANS") is a medical practice head-quartered in Morristown, New Jersey.  Plaintiff ANS is a citizen of New Jersey.  Founded in 1958, ANS is one of the largest neurosurgical practices in New Jersey, and one of the most advanced in the country.   ANS physicians spearhead groundbreaking clinical trials and participate in national registries aimed at improving the quality of spine care nationwide.

---

[1]      *See* Anthem Press Release, Anthem Reports Fourth Quarter and Full Year 2020 Results (1/27/21), *available at*, https://ir.antheminc.com/news-releases/news-release-details/anthem-reports-fourth-quarter-and-full-year-2020-results?field_nir_news_date_value[min]= ; ExecPay News, Anthem CEO Gail Boudreaux's 2020 pay rises 11% to $17M (4/9/21), *available at*, www.execpay.org/news/anthem-inc-2020-compensation-2717 ; Good Jobs First, Violation Tracker Parent Company Summary, Anthem, *available at*, https://violationtracker.goodjobsfirst.org/prog.php?parent=anthem&order=pen_year&sort=desc.

3.     ANS is a multidisciplinary team of board-certified, fellowship-trained spine specialists who treat the full spectrum of brain tumors, neurovascular disorders, and other spine disorders.   ANS physicians provide on-call neurosurgeons for various hospitals, including Morristown Memorial Hospital, Overlook Hospital, Englewood Hospital and Jersey Shore University Medical Center.

4.     At all relevant times, ANS was an out-of-network, or non-participating, healthcare provider, and it rendered emergency and/or pre-approved, medically necessary surgical and related medical services to the patients identified on the Disputed Claims List, *infra*.

5.     Plaintiff Atlantic Shore Surgical Associates, PC ("Atlantic Shore") is a medical practice with offices in New Jersey and specializing in surgical treatment, including general and bariatric surgery.  Plaintiff Atlantic Shore is a citizen of New Jersey.

6.     At all relevant times, Atlantic Shore was an out-of-network, or non-participating, healthcare provider and rendered emergency and/or preapproved, medically necessary surgical and related medical services to patients who are entitled to health benefits under plans sponsored, funded, operated, controlled, administered and/or underwrote by defendants.

**B.     Defendants**

7.     Defendants Anthem, Inc., Anthem Life Ins.,[2] Community Ins. Co., and Anthem UM Services, Inc., individually and collectively doing business as Anthem Blue Cross Blue Shield, maintain a corporate office at 220 Virginia Avenue, Indianapolis, Indiana 46204.

8.     Defendants Blue Cross of California and Anthem Blue Cross Life & Health Inc., Co., both doing business as Anthem Blue Cross, maintain a corporate office at 21215 Burbank Boulevard, Woodland Hills, California 91367.

---

[2]     Defendant Anthem Life Ins. is licensed to do business in the State of New Jersey (*see* NAIC No. 61069), and so consented to being served with legal process through the New Jersey Department of Banking and Insurance.

3

9.      Defendant Anthem Health Plans of Virginia, Inc., also doing business as Anthem Blue Cross and Blue Shield, maintain a corporate office at 2015 Staples Mill Road, Richmond, Virginia 23230.

10.      Defendants Anthem, Inc., Anthem Life Ins., Community Ins. Co., Anthem UM Services, Inc., Blue Cross of California, Anthem Blue Cross Life & Health Inc., Co., and Anthem Health Plans of Virginia, Inc. are referred to collectively in this Complaint as "**Anthem**" and/or the "**Anthem defendants**."

11.      Although Anthem has claimed that it does not write insurance in New Jersey, in practice Anthem systematically provides and sells health insurance that it knew, or should have known, relates to New Jersey citizens and residents, and/or to New Jersey companies employing New Jersey citizens and residents, *see* Plan Defendants *infra*; and consequently, Anthem is in the business of providing health insurance to individuals who frequently seek medical care from New Jersey healthcare providers.   For example, Anthem frequently and systematically administers and provides health insurance and related services in New Jersey via its New Jersey agent, Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), headquartered at 3 Penn Plaza, Newark, New Jersey 07101.

12.      The Anthem defendants are alter egos and/or agents of one another.   They maintain the same offices, leadership, and resources; Anthem subsidiaries were undercapitalized, upon information and belief; the personnel of the Anthem parent company(ies) have daily involvement in the operation of the Anthem subsidiaries and affiliates; the Anthem subsidiaries and affiliates do not pay dividends and/or lack sufficient corporate records; the Anthem companies are controlled by the same individuals; the Anthem entities hold themselves out to the public as a single economic entity (*e.g.*, "Anthem Blue Cross Blue Shield"); and otherwise, on

4

information and belief, do not maintain corporate formalities. Additionally, the Anthem entities have common ownership, financial interdependence, and function as a cohesive financial unit. Furthermore, these Anthem defendants have directed and assented to other Anthem entities to act on each other's behaves. The Anthem parent company(ies) dominates the Anthem subsidiaries and affiliates such that the Anthem defendants do not have a separate existence; the Anthem subsidiaries and affiliates are merely a conduit of the Anthem parent company(ies).

13.     At all relevant times, Anthem operated, controlled, administered, insured and/or underwrote healthcare plans relating to the thirty-eight (38) patient encounters between December 2015 to July 2018 identified in the Disputed Claims List ("DCL"), *infra*.

14.     Defendant Highmark Blue Cross Blue Shield Delaware, also known as Highmark Health Ins. Co., ("Highmark") maintains a corporate office at 800 Delaware Avenue, Suite 900, Wilmington, DE 19801. At all relevant times, Highmark operated, controlled, administered, insured and/or underwrote a plan relating to Patient R.M.[3] Highmark also administers and provides health insurance and related services within this state via its New Jersey agent, Horizon.

15.     Anthem and Highmark manifested assent and/or consented to various entities (*e.g.*, Horizon, Keenan & Assocs. and Delta Health Systems) to act on defendant's behalf and subject to its control with respect to claims at issue in this action. Further, even if Anthem, or Highmark, did not explicitly or impliedly assent to agency, it was reasonable and apparent for plaintiff(s) to infer from defendant's conduct that it had entered into an agency relationship, including but not limited to, with Horizon. At all times relevant, the agent(s) of Anthem and Highmark acted within the scope of its/their actual and/or apparent authority with respect to the claims at issue in this action.

---

[3]     To comply with HIPAA confidentiality and patient privacy, and Rule 1:38-7, the Patients are identified herein by initials, the last four digits of the identification number, date of service, and other financial information.

16.     Defendant Securitas Security Services USA, Inc. ("Securitas") maintains its corporate office at 2 Campus Drive, Parsippany, New Jersey 07054. Securitas is a citizen of New Jersey. It registered to do business in the State of New Jersey, *see* N.J. Entity ID # 0100892993, and so consented to its jurisdiction and regulation. At all relevant times, Securitas sponsored, funded and/or administered a plan relating to Patient R.S.

17.     Defendant Verizon, Inc., also known as Verizon Benefits Administration, Inc. and Verizon New Jersey Inc., ("Verizon") maintains its operational headquarters at 1 Verizon Way, Basking Ridge, New Jersey 07920. Verizon is a citizen of New Jersey. It registered to do business in the State of New Jersey, *see* N.J. Entity ID #s 0002010600 & 0100977041, and so consented to its jurisdiction and regulation. At all relevant times, Verizon sponsored, funded and/or administered a plan relating to Patient T.W.

18.     Defendants Skanska USA Building Inc. and/or Skanska USA Inc. (collectively "Skanska") maintain their office at 389 Interpace Parkway, Morris Corporate Center IV, 5th Fl., Parsippany, New Jersey 07054. Skanska is a U.S. subsidiary of a Swedish company, and a citizen of New Jersey. It registered to do business in New Jersey, *see* N.J. Entity ID #s 0100986237 & 0100889831, and so consented to its jurisdiction and regulation. At all relevant times, Skanska sponsored, funded and/or administered a plan relating to Patients H.P. and V.S.

19.     Defendant Signet Financial Management, LLC ("Signet") maintains its office at 400 Interpace Parkway Bldg. C, 2nd Fl., Parsippany, New Jersey 07054. Signet is a citizen of New Jersey. It registered to do business in the State of New Jersey, *see* N.J. Entity ID # 0600417342, and so consented to its jurisdiction and regulation. At all relevant times, Signet sponsored, funded and/or administered a plan relating to Patient A.MG.

20.     Defendant Camp Six, Inc. ("Camp") maintains its office at 10 Nolan's Point Park Road, Lake Hopatcong, New Jersey 07849.  Camp is a citizen of New Jersey.  It registered to do business in the State of New Jersey, N.J. Entity ID # 0100789980, and so consented to its jurisdiction and regulation.  At all relevant times, Camp sponsored, funded and/or administered a plan relating to Patient C.H.

21.     Defendant Siemens Industry Inc., also known as Siemens Corp. and Siemens Financial Services, Inc., ("Siemens") maintains its headquarters at 8 Fernwood Road, Florham Park, New Jersey 07932, and an office at 170 Wood Avenue, Iselin, New Jersey, 08830. Siemens is a U.S. subsidiary of a German company, and a citizen of New Jersey.  It registered to do business in the State of New Jersey, *see* N.J. Entity ID #s 0100760286 & 0100744182, and so consented to its jurisdiction and regulation.  At all relevant times, Siemens sponsored, funded and/or administered a plan relating to Patient M.M.

22.     Defendant Bayer Corporation ("Bayer") maintains its headquarters at 100 Bayer Boulevard, Whippany, New Jersey 07932.  Bayer is a U.S. subsidiary of a German company, and a citizen of New Jersey.  It registered to do business in the State of New Jersey, *see* N.J. Entity ID# 0100348033, and so consented to its jurisdiction and regulation.  At all relevant times, Bayer sponsored, funded and/or administered a plan relating to Patient W.L.

23.     Defendant Prime Healthcare Services–St. Michael's LLC, doing business as Saint Michael's Medical Center, ("St. Michael's") maintains its office at 111 Central Avenue, Newark, New Jersey 07102.  St. Michael's is, on information and belief, a citizen of New Jersey.  It registered to do business in the State of New Jersey, *see* N.J. Entity ID # 0400584178, and so consented to its jurisdiction and regulation.  At all relevant times, St. Michael's sponsored, funded and/or administered a plan relating to Patient N.G.

24.     Defendant Prime Healthcare Services–St. Clare's LLC, doing business as St. Clare's Health, and also known as St. Clare's Hosp., Inc., ("St. Clare's") maintains its office at 25 Pocono Road, Denville, New Jersey 07834.  St. Clare's is, on information and belief, a citizen of New Jersey.  It registered to do business in New Jersey, *see* N.J. Entity ID #s 0600406920, 0100773460 & 0100615379, and so consented to its jurisdiction and regulation.  At all relevant times, St. Clare's sponsored, funded and/or administered a plan relating to Patient G.F.

25.     Defendants Securitas, Verizon, Skanska, Signet, Camp, Siemens, Bayer, St. Michael's and St. Clare's are referred to collectively as the "**Plans**" and/or "**Plan Defendants.**"

26.     All allegations against a Plan Defendant include liability acts and omissions of each defendant's agents, including codefendants and unnamed parties, including for example, when Anthem functioned as an administrator, fiduciary and/or an agent of a Plan Defendant.[4] The Plan Defendants manifested assent and/or consented to the Anthem Defendants, including their agents, to act on a Plan Defendant's behalf and subject to its control with respect to the claims at issue in this action.  Further, even if the Plan Defendant did not explicitly or impliedly assent to agency, it was reasonable and apparent for plaintiff(s) to infer from the Plan Defendant's conduct that it had entered into an agency relationship with Anthem.  At all times relevant, the Plan Defendant's agent Anthem acted (directly or via its own agents) within the scope of its actual and/or apparent authority with respect to the claims at issue in this action.

27.     Defendants ABC Corps. 1-100 are at present unidentified, fictitious entities that consist of other insurers, plans or related entities which relate to the emergency services, and/or pre-approved services to patients of plaintiff(s), including those identified herein.  Plaintiff expects to identify these entities after conducting discovery.

---

[4]     *See generally Perrone v. J&J*, 2020 WL 2060324, at *7–10 (D.N.J. Apr. 29, 2020) (collecting cases re applicability of the doctrine of agency in healthcare disputes).

## JURISDICTION & VENUE

28.　　The Court has *in personam* jurisdiction over defendants because (a) all defendants are citizens of the State of New Jersey and/or conduct business in the State of New Jersey (whether directly or via agents), and so derive benefits and privileges from this State, including but not limited to, (i) contracting to provide health plans to individuals who defendants knew to be citizens or residents of New Jersey,[5] including for example, Anthem and Highmark's processing and payment of claims submitted by NJ providers' claims via Anthem and Highmark's New Jersey-headquartered agent Horizon; (ii) contracting to provide or administer health benefit plans that permit New Jersey residents and citizens to obtain medical care in New Jersey from healthcare providers licensed by the State of New Jersey, *i.e.*, the Blue Cross Blue Shield Association's ("BCBSA") so-called "Inter-Plan Arrangements" and related BCBSA rules[6]; (iii) contracting to provide utilization and management services that permit members or dependents to obtain medical care in New Jersey from health providers licensed in the State of New Jersey, and so are subject to New Jersey law, regulation and oversight governing defendants' conduct; and/or (b) defendants have consented to the jurisdiction of New Jersey by registering and being authorized to do business in this State; (iv) with respect to the patients on the DCL, Anthem and Highmark routinely transmitted to New Jersey residents and medical

---

[5]　　Thirty-five of the thirty-eight patient encounters on the DCL involve patients who indicated New Jersey residential addresses. The other three patients reside in NY and PA counties that border New Jersey.

[6]　　*Sablic v. Croatia Line*, 315 N.J. Super. 499, 504 (App. Div. 1998), *certif. denied*, 158 N.J. 74 (1999) ("substantial, continuous activity of agents [Horizon] of a corporation [Anthem] within a jurisdiction establishes the minimum contacts.... This rule applies whether the agent is a corporation or an individual. Substantial continuous activity within the state by one corporation acting as agent for another authorizes the courts of the state to exercise general *in personam* jurisdiction over the principal"); *Mastondrea v. Occid'l Hotels Mgmt. S.A.*, 391 N.J. Super. 261, 270 (App. Div. 2007) ("Courts have generally sustained the exercise of personal jurisdiction over a defendant who, as a party to a contract, has had some connection with the forum state or who should have anticipated that [its] conduct would have significant effects in that state"); *see also Jacobs v. Walt Disney World, Co.*, 309 N.J. Super. 443, 456-60 (App. Div. 1998); *Charles Gendler & Co. v. Telecom Equip. Corp.*, 102 N.J. 460, 478-79 (1986).

providers correspondence, pre-authorization for medical services, Explanation of Benefits statements ("EOBs"), payments for services rendered by New Jersey providers, responses to appeals, re-pricer negotiations, and more[7]; and (v) Anthem routinely litigates in New Jersey courts, thus acknowledging New Jersey's jurisdiction.[8]

29.     All the medical services at issue in this matter were rendered in New Jersey.

30.     Venue is proper pursuant to Rule 4:3-2, as plaintiff ANS resides in Morris County, and defendant(s) reside and/or do business in Morris County.

31.     There is no federal subject-matter jurisdiction under complete preemption. *See McCulloch Ortho. Surg'l Servs., PLLC v. Aetna Inc.*, 857 F.3d 141 (2d Cir. 2017); *Progressive Spine & Orthos., LLC v. Anthem Blue Cross Blue Sh.*, 2017 WL 4011203 (D.N.J. Sept. 11, 2017); *GBForefront, L.P. v. Forefront Mgnt. Gr.*, 888 F.3d 29 (3d Cir. 2018). Further, there is no federal diversity subject matter jurisdiction as complete diversity of citizenship is lacking. In this action, plaintiffs do not assert any claim or recovery with respect to an assignment or right relating to a federal employee benefit plan or the Federal Employee Health Benefit Act. NOTICE: Plaintiffs will seek attorney's fees and costs from defendant(s) for improper removal of this action. 28 U.S.C. § 1447(c); *Martin v. Franklin Capital*, 546 U.S. 132, 140–41 (2005).

---

[7]     *Lebel v. Everglades Marina, Inc.*, 115 N.J. 317, 320, 325-28 (1989) (recognizing out-of-state statements transmitted to New Jersey in furtherance of defendant's commercial activity or benefit derived from New Jersey can support specific jurisdiction); *Blakey v. Cont'l Airlines, Inc.*, 164 N.J. 38, 46, 68–69 (2000) (same); *e.g.*, *Small, MD v. Blue Cross Blue Sh. of Mich.*, No. BER-L-4141-18 (Law Div. 3/20/19) (Bergen CBLP Court denied out-of-state Blue Cross health insurer's motion to dismiss lack of jurisdiction a NJ provider's reimbursement action).

[8]     *E.g.*, *Albert v. Liberty Mut. Fire Ins.*; *Anthem Blue Cross Blue Sh.*, No. CAM-L-0053-21 (N.J. Law Div. 2021); *Vasquez v. Anthem Ins. Cos. Inc.*, No. ESX-L-03955-20 (N.J. Law Div. 2020); *Progressive Spine & Orthos., LLC v. Anthem Blue Cross Blue Sh.*, 2017 WL 4011203 (D.N.J. Sept. 11, 2017); *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, 2019 WL 4635482 (D.N.J. Sept. 24, 2019); *Thompson v. Anthem Cos., Inc.*, 2019 WL 2591100 (D.N.J. June 7, 2019); *Small v. Anthem Blue Cross Blue Sh.*, 2019 WL 1220322 (D.N.J. Mar. 15, 2019).

## SUBSTANTIVE ALLEGATIONS

32.    At all relevant times, plaintiffs were out-of-network healthcare providers with respect to defendants (excepting ANS's limited participation in the MultiPlan program).

33.    The Disputed Claims List ("DCL"), set forth below, identifies the 36 patient encounters issue in this action, including the Patients' initials, Blue Cross member number, date of service, amounts at issue, and sufficient information for defendants to identify the claims:

| No. | Initials | ID Number | Date | Billed | Paid | Owed | Basis |
|---|---|---|---|---|---|---|---|
| 1 | R.M. | **********5001 | 12/9/2015 | $32,871.00 | $967.65 | $31,903.35 | Underpaid emergency services |
| 2 | S.A. | ********4832 | 5/13/16 | $87,122.60 | $4,171.88 | $82,950.72 | Underpaid emergency services, contrary to pre-authorization (#243148869) |
| 3 | G.F. | ********28PH | 6/11/2016 | $31,400.00 | $926.24 | $30,473.76 | Underpaid emergency services |
| 4 | | | 7/26/2016 | $74,300.00 | $2,022.07 | $72,277.93 | Underpaid emergency services, contrary to in-network exception |
| 5 | A.MG. | ********2657 | 8/29/2016 | $46,300.00 | $1,329.57 | $44,970.43 | Underpaid emergency services; continuation of care |
| 6 | L.O. | ********33XU | 11/20/2016 | $34,400.00 | $3,435.92 | $30,964.08 | Underpaid emergency services |
| 7 | | | 11/21/2016 | $66,400.00 | $3,096.29 | $63,303.71 | Underpaid emergency services; continuation of care |
| 8 | | | 11/28/2016 | $51,400.00 | $2,791.30 | $48,608.70 | Underpaid emergency services; continuation of care |
| 9 | S.S. | ********4669 | 1/5/2017 | $39,200.00 | $1,023.90 | $38,176.10 | Underpaid neurosurgical services, contrary to pre-authorization and in-network exception |
| 10 | L.O. | ********33XU | 1/23/2017 | $66,400.00 | $2,322.23 | $64,077.77 | Underpaid emergency services; continuation of care |
| 11 | V.S. | ********7938 | 4/20/2017 | $34,500.00 | $3,481.00 | $31,019.00 | Underpaid emergency services, contrary to pre-authorization |

| No. | Initials | ID Number | Date | Billed | Paid | Owed | Basis |
|---|---|---|---|---|---|---|---|
| 12 |  |  | 5/15/2017 | $61,900.00 | $2,777.57 | $59,122.43 | Underpaid emergency services |
| 13 | C.H. | ********4751 | 5/15/2017 | $32,500.00 | $1,985.77 | $30,514.23 | Underpaid emergency services. Representation that no pre-authorization is required (#UM931153) |
| 14 |  |  | 5/27/2017 | $26,800.00 | $2,270.03 | $24,529.97 | Underpaid emergency services; continuation of care |
| 15 | K.L. | ********4978 | 7/10/2017 | $43,700.00 | $2,238.13 | $41,461.87 | Underpaid emergency services |
| 16 | P.H. | ********1646 | 7/28/2017 | $65,200.00 | $14,844.90 | $50,355.10 | Underpaid emergency services, contrary to pre-authorization (#10089888) |
| 17 |  |  | 8/18/2017 | $50,200.00 | $3,000.32 | $47,199.68 | Underpaid emergency services |
| 18 | G.F. | ********28PH | 8/18/2017 | $12,900.00 | $99.44 | $12,800.56 | Underpaid emergency services |
| 19 |  |  | 8/29/2017 | $44,300.00 | $1,652.05 | $42,647.95 | Underpaid emergency services, contrary to pre-authorization (#0252759478) |
| 20 | T.W. | ********9382 | 8/29/2017 | $91,700.00 | $9,180.31 | $82,519.69 | Underpaid emergency services, contrary to pre-authorization (#10195732) |
| 21 | S.O. | ********7191 | 10/13/2017 | $45,800.00 | $2,317.52 | $43,482.48 | Underpaid emergency services, contrary to pre-authorization (#0253078169); continuation of care |
| 22 | R.S. | ********7296 | 11/13/2017 | $47,200.00 | $1,348.92 | $45,851.08 | Underpaid emergency services |
| 23 |  |  | 12/19/2017 | $67,860.00 | $1,827.33 | $66,032.67 | Underpaid emergency services |
| 24 | G.F. | ********28PH | 2/5/2018 | $50,310.00 | $789.05 | $49,520.95 | Underpaid emergency services, contrary to pre-authorization (#UM2226835) |
| 25 | W.VN. | ********251M | 2/12/2018 | $120,276.00 | $3,653.20 | $116,622.80 | Underpaid emergency services |
| 26 |  |  | 2/12/2018 | $32,760.00 | $4,132.25 | $28,627.75 | Underpaid emergency services |

| No. | Initials | ID Number | Date | Billed | Paid | Owed | Basis |
|-----|----------|-----------|------|--------|------|------|-------|
| 27 | H.P. | ********4708 | 3/8/2018 | $115,570.00 | $8,352.92 | $107,217.08 | Underpaid emergency services, contrary to pre-authorization (#02180533538100) |
| 28 | | | 3/8/2018 | $32,916.00 | $1,077.10 | $31,838.90 | Underpaid emergency services, contrary to pre-authorization |
| 29 | W.L. | ********3805 | 4/26/2018 | $101,920.00 | $1,620.08 | $100,299.92 | Underpaid emergency services; MultiPlan contract |
| 30 | J.S. | ********4027 | 6/7/2018 | $101,920.00 | $1,175.26 | $100,744.74 | Underpaid emergency services |
| 31 | | | 6/7/2018 | $44,720.00 | $2,490.17 | $42,229.83 | Underpaid emergency services |
| 32 | | | 6/9/2018 | $52,260.00 | $1,408.81 | $50,851.19 | Underpaid emergency services |
| 33 | | | 6/9/2018 | $15,678.00 | $112.71 | $15,565.29 | Underpaid emergency services |
| 34 | | | 6/14/2018 | $15,990.00 | $892.20 | $15,097.80 | Underpaid emergency services |
| 35 | R.S. | ********7296 | 6/21/2018 | $59,540.00 | $931.39 | $58,608.61 | Underpaid emergency services |
| 36 | J.S. | ********4027 | 6/28/2018 | $15,990.00 | $2,569.25 | $13,420.75 | Underpaid emergency services |
| 37 | | | 7/6/2018 | $67,095.60 | $2,146.89 | $64,948.71 | Underpaid emergency services |
| 38 | M.M. | ********5446 | 7/20/2018 | $176,872.00 | $9,842.56 | $167,029.44 | Underpaid emergency services |

Defendants grossly underpaid for these emergency services, *i.e.*, **just 5¢ on the dollar**, and at this point, accumulated an outstanding balance exceeding $1.9 million, exclusive of interest.[9]

34.    Defendants issued a pre-authorization,[10] or network exception, relating to the neurosurgical services relating to at least ten (10) patients on the DCL; additional pre-

---

[9]    Plaintiff reserves the right to supplement and/or amend the DCL during the course of discovery, including to identify additional patients and/or dates of service related to the defendants and wrongdoing alleged herein.

[10]    "Pre-authorization" refers to the health industry practice of a medical provider contacting a payor, plan, administrator or an agent thereof, and being provided approval or confirmation that services related to a medical incident will be reimbursed or being advised that pre-authorization is unnecessary, which in turn induces the provider to render services to that patient. Here, the term pre-authorization is used interchangeably with similar

authorizations relating to the other dates of service, including those obtained by the hospitals for the services, are expected to be identified during discovery. Plaintiffs relied on, and were induced in part to render services, with the expectation to be reasonably compensated consistent with the statements, representations and conduct of Defendants (including its/their agents).

35.     Statutory law bars retroactive withdrawal of pre-authorization, to the extent pre-authorization was sought for any of the patient claims identified on the DCL, unless the provider made material misrepresentations to obtain authorization (which did not occur in this instance).

36.     Additionally, defendants knew, or should have known, that pursuant to various New Jersey health statutes and regulations, ANS and Atlantic Shore were and are required to provide emergent care to all patients, regardless of their ability to pay, or the source of payment. N.J.S.A. 26:2H-18.64. Defendants are also aware of plaintiffs' legal obligation in this regard when they perpetrated their underpayment scheme.

37.     Defendants also knew, or should have known, that New Jersey patients receiving emergency medical care must be held harmless under various New Jersey statutes and regulations, and thus defendants must pay plaintiffs 100% of the usual, customary and reasonable ("UCR") charges, less the patient's copay, coinsurance or deductible, if any, for emergency services under New Jersey law. *Aetna Health Inc. v. Srinivasan*, 2016 WL 3525298 (N.J. App. Div. June 29, 2016); *see also* N.J.A.C. 11:22-5.8. 11:24-5.1, -5.3, -9.1(d). These laws, collectively referred to herein as the "State Insurance Mandates" -- and which defendants refer to as "applicable state" law, "legislated fee" or similar terms in the ordinary course of

---

terms pre-certification, prior authorization, authorization, pre-approval representation and/or benefit verification – which generally refer to the same practice in the industry. *See Plastic Surgery v. Aetna*, 967 F.3d 218 (3d Cir. 2020); *McCulloch Ortho. Surg'l Srvcs. v. Aetna*, 857 F.3d 141 (2d Cir. 2017); *The Meadows v. Employers Health Ins.*, 47 F.3d 1006 (9th Cir. 1995); *Hospice of Metro Denver v. Gr. Health Ins. of Okla.*, 944 F.2d 752 (10th Cir. 1991); *Memorial Hosp. Sys. v. Northbrook Life Ins.*, 904 F.2d 236 (5th Cir. 1990).

dealings and business with plaintiffs – give rise to certain state common law claims that plaintiffs have asserted in this action.

38.    The UCR fee is defined as, or is reasonably interpreted to mean, the amount that out-of-network providers,[11] like plaintiffs, normally charge to patients in the free market, *i.e.*, without an agreement with an insurance company or other payor to reduce such a charge in exchange for obtaining access to the defendants' members and beneficiaries. The UCR fee means the reasonable charge for a particular service by providers in the same geographic area with similar training and experience, that is, a northern New Jersey neurosurgical practice.

39.    On information and belief, Anthem and Highmark do not maintain a database or otherwise have direct data of the UCR for New Jersey neurosurgical services; consequently, it relies on Horizon's practices, data and knowledge.

40.    As noted above, defendants, including their agent Horizon, and ANS, as well as Atlantic Shore, have established courses of dealings regarding the payment of emergency services. For example, defendants disseminate representations to the public, including plaintiffs, in the ordinary course of business acknowledging their statutory and regulatory obligations under the State Insurance Mandates, for example:

---

[11]    Generally in the healthcare industry, medical providers are designated for reimbursement purposes as being out-of-network or in-network.  Generally, an out-of-network, or non-participating, provider is reimbursed for covered services at the usual, customary and reasonable ("UCR") rate, which is the customary charge of similar providers rending a similar service in the same geographic region.  If a patient's health plan fails to pay the UCR rate, an out-of-network provider may be permitted in certain circumstances, and often required to avoid "fee forgiveness" litigation, to bill the patient the outstanding balance (a practice commonly referred to as "balance billing").  By contrast, an in-network, or participating, provider is reimbursed for services at a below-market, discounted rate set forth in an agreement between the provider and the health payor, insurance or similar company. In consideration for such provider agreements, the health plan agrees to steer and encourage its members and their dependents to patronize the in-network providers, while such providers are prohibited from balance billing.



Three Penn Plaza East
Newark, NJ 07105-2200
www.HorizonBlue.com

## Claim Status Details

**Patient Information**
Patient Name:
Patient ID # (CCID):
Patient Account #: 210037
Patient DOB:

**Provider Information**
Billing Provider #:  222302733

Billing Provider NPI:  1663093767

**Claim Information**

| | | | | |
|---|---|---|---|---|
| Claim #: | 2017193369004 | | Claim Status: | FINALIZED |
| Service Date Range From: | 07/05/2017 | to: | 07/05/2017 | Total Charge Amount: | 28,933.00 |
| Payee (Subscriber or Provider) | Provider | | | |
| Payment Amount: | 20,097.03 | Coinsurance: | 407.92 | CoPay: | 0.00 |
| Deductible: | 0.00 | Not Covered: | 0.00 | Claim Message #: | |
| Claim Received Date: | 06/14/2019 | | Payment Method: | EFT |
| Check/EFT Trace Number: | 010009240 | | Check/EFT Date: | 06/28/2019 |
| Out of Insurance Amount Paid: | 0.00 | | Medicare Amount Paid: | 0.00 |

| Service Line Point | Procedure Date | Modifier | Units | Service Type | Covered Amount | Copay Amount | Deductible Amount | Charged Amount | Not Covered Amount | Paid Amount | Medicare Amount Paid | Other Insurance Amount Paid | Claim Message # |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

**Message Description**

P469     THIS SERVICE HAS BEEN PRIOR AUTHORIZED AT AN IN-NETWORK LEVEL OF BENEFITS. THE RENDER WILL NOT BE BALANCE BILLED THE DIFFERENCE BETWEEN BILLED CHARGES AND THE NEGOTIATED CHARGES.

\* \* \*

 

Horizon Blue Cross Blue Shield of New Jersey

*Making Healthcare Work.*

Via Facsimile: 732-747-5259

3 Penn Plaza East
Newark, NJ  07105
www.horizonblue.com

June 05, 2020

ATTN:  ROBIN MACK
ATLANTIC NEUROSURGICAL SPECIAL
310 MADISON AVENUE
MORRISTOWN, NJ 07960

Re:

August 02, 2018

Dear ROBIN MACK,
This letter confirms the understanding between ATLANTIC NEUROSURGICAL SPECIAL and Horizon Blue Cross Blue Shield of New Jersey that reimbursement for services for the above named patient will be processed for payment based on the negotiated charge(s) listed:

| Procedure Code | Negotiated Amount |
|---|---|
| 22551 | $35,000.00 |
| 22845 | $18,760.00 |
| 22552 | $18,000.00 |
| 20930 | $ 2,120.00 |
| 20936 | $ 2,120.00 |
| **Total Negotiated Amount** | **$76,000.00** |

Reimbursement will be processed in accordance with Horizon BCBSNJ's claims processing guidelines, with Horizon BCBSNJ's portion of the payment issued directly to ATLANTIC NEUROSURGICAL SPECIAL. Consequently, ATLANTIC NEUROSURGICAL SPECIAL agrees to waive any prompt pay interest due if payment is made within twenty (20) business days of receipt of the fully executed letter of agreement. The member remains responsible for any co-payment, coinsurance and/or deductible applicable under the subscriber's benefit plan.  You agree not to balance bill the patient for the difference between your billed charge(s) and the negotiated charge(s). Please be advised that the payment amount agreed to in this Letter of Agreement may be adjusted should Horizon BCBSNJ be provided with any new and/or additional information affecting how the claims referenced in this

Defendants also issue correspondence and literature conveying to providers that, in Anthem and Highmark's practices and policies (via Horizon), New Jersey health law regarding reimbursement of out-of-network providers who render emergency services will be complied with. Indeed, Horizon has **admitted** (and so by extension Anthem and Highmark) that it is required to follow the State Insurance Mandates and to pay a sufficient amount to protect patients receiving emergency services from excessive cost-sharing and/or balance bills. In sum, defendants' statements, conduct, and other acts are consistent with plaintiffs' understanding that the State Insurance Mandates must be followed so that the Patients are held harmless when they receive emergency surgery and treatment.

41.     Despite defendants' acknowledgements of the obligation relating to emergency services, and their courses of dealings with ANS and Atlantic Shore, respectively, with respect to the Patients on the DCL defendants have ignored the obvious emergent nature of plaintiffs' services (*e.g.*, cerebral hemorrhage, arteriovenous rupture, artery aneurysm, thalamic glioma, etc.), thereby improperly exposing the Patients to balance bills that greatly exceed the correct patient responsibility.

42.     Another example of the courses of dealings is that when ANS and Atlantic Shore, respectively, render emergency and/or pre-authorized services, defendants will frequently issue payments closer to the requirements of New Jersey law and/or UCR, for example, by Anthem's "network exception" policies, or its practices of using repricers (*e.g.*, Delta Health System, MultiPlan, etc.) to engage providers in negotiation and pay plaintiff a "negotiated amount" in consideration for ANS or Atlantic Shore not balance billing a patient where plaintiff was the on-call emergency physician at a hospital, and at the time of the emergency, there was no in-network physician available. More generally, Anthem has publicly stated that its reimbursement

practices are based, at least in part, on Anthem's internal corporate "payment policies" (as opposed to a plan's terms), including on information and belief, binding statements in other litigation.[12]

43.    In the past, health insurers have been sanctioned by the N.J. Department of Banking and Insurance ("DOBI") for its failure to properly pay out-of-network providers for emergency services and was ordered to pay a multi-million dollar fine due to its improper claims processing practices, including *inter alia*, paying N.J. physicians due "fair payment" only 125% of Medicare rates. *E.g.*, <u>DOBI levies nearly $9.5 million in penalties against Aetna</u> (July 2007), *available at* <u>www.state.nj.us/dobi/pressreleases/ pr070725.htm</u>; *In re Oxford Health Ins., et al.*, No. E16-90 (DOBI found insurer violated New Jersey health mandates by failing to pay a sufficient amount to hold members harmless for out-of-network emergency services; fined $300,000 and agreed to re-process the claims). This action involves similar unlawful practices and insufficient reimbursement for out-of-network emergency care, leaving N.J. citizens and residents unlawfully exposed to excessive portion of surgical costs.[13]

44.    The BCBSA maintains inter-corporate policies, programs and practices that link the supposedly independent[14] regional Blue Cross entities across the nation in a seamless corporate network for claims processing, reimbursement and other services. Through this

---

[12]    For example, even defendant(s) has indicated that, in order to limit patients' cost-sharing and financial exposure for emergency services, it reimburses out-of-network emergency providers the greater amount among: (A) the median in-network amount; (B) the UCR amount reduced only by in-network cost-sharing obligations; or (C) the Medicare fee schedule amount.

[13]    Any purported self-funded plan relating to this action opted-in, expressly or implicitly by their conduct to New Jersey's State Insurance Mandate, on information and belief.

[14]    The Association's members are the subject of an antitrust class action. *In re Blue Cross Blue Sh. Antitrust Litig.*, No. 2:13-cv-20000 (11th Cir. Dec. 12, 2018). A federal court recently granted preliminary approval for a $2.7 billion settlement from Blue Cross Blue Shield insurers that also included the implementation of business reforms addressing the way in which the Blues operate, related to a conspiracy to limit competition and inflate prices for Patients.

arrangement entered into separate from and independent of a particular plan, Anthem and Highmark (and BCBSA) require a New Jersey health providers who renders services to an out-of-state Blue Cross patient to deal with, and submit claims to, the "local" Blue Cross entity, here Horizon.

45. Horizon, agent of Anthem and Highmark, instructs New Jersey providers to use Horizon as the point of contact for claim submission, appeals and related questions, Horizon handles claims processing and reimbursement, and it processes the reimbursement and provides an EOB or Explanation of Payment ("EOP"). Horizon also instructs providers to treat out-of-state Blue Cross members the same as you would a local Horizon BCBSNJ member.

46. Horizon also represents that patients may seek emergency care from the nearest provider (regardless of network status), and that the patient's liability would be held harmless, that is, normal responsibility under the plan, for example, when a patient receives emergency services, he/she should not have to may any amount above Horizon's negotiate rate and any applicable cost-sharing.

47. Defendants represent that a provider may rely on BCBSA' **suitcase logo** on a patient's identification card to determine which patients are part of the BCBSA inter-regional corporate arrangement, for example:



48.    The BCBSA inter-regional corporate policies functions as an integrated national system that enables members, or dependents of members, of one Blue Cross corporation (*i.e.*, home area) to obtain healthcare services while in another Blue Cross corporation's service area (*i.e.*, host area), and it links the various Blue Cross entities through a single system for claims processing and reimbursement.   Under this inter-regional corporate arrangement, when a New Jersey provider treats a person in New Jersey who is a member or beneficiary of an allegedly out-of-state Blue Cross plan, the New Jersey provider must submit its claims to Horizon, the local Blue Cross entity, which is the contact for all New Jersey provider education, pricing of claims, reimbursement rules, issue payment and adjustments, appeals and problem resolution.

49.    Defendants abuse the aforementioned inter-corporate arrangement as a backdoor to engage in the health insurance business with respect to patients who are citizens or residents of New Jersey, and/or employed by companies that reside in or employ residents of New Jersey.

50.    Thus, with respect to the Patients and dates of service on the DCL where ANS or Atlantic Shore rendered services to a patient that has a Blue Cross plan based outside of New Jersey, plaintiff submitted the claims for processing and payment to Horizon.  Horizon held itself out to plaintiff as the plan, payor, fiduciary and/or administrator for out-of-state Blue Cross plans, administrators or entities, including Anthem and Highmark.

51.    With respect to patients and dates of service on the DCL where plaintiffs rendered emergency and/or pre-approved medical care to patients who purportedly had "non New Jersey" Blue Cross plans, it was defendant Horizon that processed, priced, pre-approved and/or decided appeals, and in this capacity Horizon functioned as the agent of the out-of-state Anthem or Highmark payor, plan, fiduciary-in-fact, and/or administrator.

52.     Horizon, agent of Anthem and Highmark, should have processed and/or priced plaintiffs' claims at New Jersey UCR, the amount required by New Jersey law for emergency services, and/or the amount due where pre-authorization was provided, in accordance with the parties' course of conduct and dealings and trade usage.  It was unlawful for Horizon to apply a so-called "local discount" rate to the claims it was responsible for as the "host blue" or "local plan," in connection with the BCBSA arrangement.

53.     Anthem and Highmark are liable for underpaid out-of-state Patients based (i) both its direct and indirect (agent's) conduct, *e.g.*, pricing plaintiffs' claims, violating New Jersey ER mandate, etc.; and/or (ii) as an alter ego of the host blue/local plan, as Horizon's conduct and representations induced plaintiffs to render services to Patients who Defendant(s) alleges/ed are members or dependents of members of out-of-state Anthem or Highmark plans.

54.     ANS and Atlantic Shore reasonably relied on prior payments that were based on defendants' "network exception" policy, the post-service "negotiated amount" practices (*i.e.*, letter agreements), practices related to the BCBSA inter-regional arrangement, and/or non-plan internal corporate policies.  Defendants' use of these program and policies in a bait-and-switch manner is unreasonable, arbitrary and unlawful.

55.     ANS and Atlantic Shore had the insureds identified in the DCL complete claim forms or other similar documents providing their health information.  ANS and Atlantic Shore also created documents detailing the procedures performed, including operative reports, financial information and amounts due.

56.     All health plans in the United States, as a matter of law and industry practice, reimbursement providers that render emergency services, regardless of a provider network status. Pre-authorization is not required for emergency and post-stabilization services.

57.     After rendering the services referenced herein, plaintiffs timely filed claims with defendants, in accordance with industry practice, course of dealings, and New Jersey law. Plaintiffs also submitted supporting documents to substantiate its requests for payment to defendants and/or their agents. Even though the services rendered by plaintiff were emergency and/or pre-approved, medically necessary surgical care (facts upon which plaintiffs reasonably relied), defendants failed to issue proper reimbursement for the services rendered by plaintiffs to the Patients identified in the DCL.

58.     Defendants were also required to make payment to plaintiffs of the correct amount for each claim promptly within the time period allowed by law.

59.     ANS, and Atlantic Shore, exhausted the administrative remedies of defendant(s), and any related entities or agencies, for the claims at issue in this action. R. 4:5-8(b); *cf.* Fed. R. Civ. P. 9(c). Furthermore, the administrative appeal process is illusory and futile. Anthem routinely issues curt and opaque responses that reject provider appeals without any explanation for the initial determination. Another practice of Anthem is to refuse to acknowledge appeals by plaintiff unless and until patients complete particular forms, and then after that process is completed, declining to substantively respond to appeals by claiming it was untimely (even though they were not). Further, Anthem has a track record of being fined by regulators for repeated failures to properly identify and handle appeals.[15]

60.     In addition, to avoid or reduce balance billing the patients identified in the DCL, plaintiff and its representatives, engaged in telephonic and written communication with defendants' representatives and/or agents regarding the claims at issue in this litigation prior to filing formal legal action. However, defendants were non-responsive.

---

[15]     https://violationtracker.goodjobsfirst.org/violation-tracker/ca-blue-cross-of-california-anthem-blue-cro-1

22

61.     Defendants have failed to issue proper payment for the surgical and medical services rendered by plaintiffs.  Instead, defendants issued gross underpayment.  In making improper payments, defendants' actions or inactions were unlawful and improper because defendants failed to calculate the amount of the payment in accordance with the duties owed pursuant to state statutory, regulatory and/or common law.

62.     Upon information and belief, defendant(s) intentionally and deliberately administers the plan(s) in a self-serving/self-dealing manner to lower the reimbursement for out-of-network services in order: (i) to increase the profits of defendant(s) because of the financial incentive and increased compensation due to underpaying out-of-network providers, like plaintiffs; and/or (ii) to discourage patients from seeking treatment for emergent medical conditions or from the healthcare provider of their choice -- specifically using out-of-network providers -- even though the patient(s) paid a higher premiums in order to access the out-of-network provider of his/her choice, and defendant(s) promised access to such providers.

63.     For these reasons, defendants and/or their agents have a conflict of interest with the insureds and breached duties they owed to the patients in processing these claims.

64.     Anthem was a formal or *de facto* fiduciary of the Patients' health benefit plans, *i.e.*, the Plan Defendants, and thus all claims herein also include fiduciary-based liability.

65.     As a matter of routine business practice, plaintiff(s) engaged in regular communications and discussions with defendants and/or their agent(s) regarding benefit verifications, reimbursement and other issues; plaintiff(s) submitted its claims directly to defendant(s) and/or their agent(s); the provider submitted claims were generally processed by defendant(s) and/or their agent(s); when defendants issued underpayments, they issued direct reimbursement to plaintiff; defendants and/or their agents issued EOBs and other statements

23

directly to plaintiff; and plaintiff undertook and engaged in numerous appeals of defendants' decisions.

66.     Throughout the parties' course of dealings and numerous forms of communication and interaction, defendant(s) and/or their agent(s) voluntarily and freely engaged with and dealt directly with plaintiffs.  Plaintiffs relied in good faith on defendants' conduct and the parties' course of dealings in rendering medical services.

67.     All the claims in this action arise from state common, statutory and regulatory law, and none are predicated on any purported federal law, right or statute (including for example, ERISA and FEHBA).  Each plaintiff has asserted its own direct claims and causes of action, rather than derivative claims predicated on an Assignment of Benefits from a patient. *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 178 (3d Cir. 2014); *e.g.*, *N. Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co.*, No. 16-1544, 2017 WL 659012 (D.N.J. Feb. 17, 2017), *R&R adopted*, 2017 WL 1055957 (D.N.J. Mar. 20, 2017); *Emerg'y Care Servs. v. UnitedHealth*, 515 F. Supp. 3d 298 (E.D. Pa. 2021); *Fla. Emerg. Phys'ns Kang & Assocs., M.D., v. United Healthcare of Fla.*, __ F. Supp. 3d ___, 2021 WL 2525262 (S.D. Fla. Mar. 16, 2021) (applying *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S. Ct. 474 (2020); holding state health statutes were not preempted by ERISA).  The payment amount is based on corporate payment policies or programs, rather than the terms of any alleged "ERISA plan."  In addition, Blue Cross plans, *e.g.*, Anthem, Highmark, routinely contain anti-assignment clauses, precluding federal standing and removal jurisdiction.

68.     Furthermore, all claims and causes of action herein arise from and/or under one or more "independent duties," unfettered by any type of federal preemption, including, *inter alia*:

    a.  The New Jersey prompt pay laws, statutes and regulations providing implied contractual duties to plaintiffs;

b.  The New Jersey laws, statutes and regulations governing the reimbursement of out-of-network providers rendering emergency services providing implied contractual duties to plaintiffs;

c.  The pre-authorizations, pre-certifications and/or payment verifications provided by defendants to plaintiffs in order to induce plaintiffs to render surgical and medical services with the promise of payment.

69.     Moreover, the State Insurance Mandates and related causes of action pled herein are expressly "saved" from ERISA preemption as these laws regulate insurance in the State of New Jersey.

70.     This lawsuit addresses defendants' failure to provide the appropriate <u>amount</u> of reimbursement related the patients on the DCL and defendants' failure to properly <u>reimburse</u> plaintiffs for the services rendered to patients. *Pascack Valley Hosp. v. Loc. 464A*, 388 F.3d 393 (3d Cir. 2004).   There is no dispute that defendants' plans provide benefits for emergency medical services, referenced in the DCL, as demonstrated by their conduct: defendants issued partial payments.

71.     By and through this lawsuit, plaintiffs now seek damages due to all defendants' actions as described herein and below.

## FIRST COUNT

### Breach of Implied Contract

72.     Plaintiffs repeat and reallege each and every allegation set forth herein as if set forth in full herein.

73.     Defendants indicated, by a course of conduct, dealings and the circumstances surrounding the relationship, to each plaintiff that defendants would pay for surgical and medical

services provided, including the respective emergency services provided by each plaintiff to defendants' insureds identified in the DCL.

74.    Defendants represent that their members and beneficiaries were authorized for out-of-network emergency and/or pre-authorized non-emergent care, and that they may go to any hospital emergency room when they need emergency care.

75.    The commercial circumstances surrounding the relationship of plaintiff(s) and defendant(s), including local industry practices and regulatory context.  For instance, to ensure access to emergency care regardless of a patient's insurance status, New Jersey laws requires payors to specifically notify their subscribers that they are entitled to have "access" to emergency services, and "payment of appropriate [health] benefits" for emergency conditions "24 hours a day" and "seven days a week," N.J.A.C. 11:24A-2.5(b)(2); to ensure access to emergency care regardless of a patient's insurance, New Jersey insurance regulations mandate that payors to promptly pay claims, N.J.S.A. 17B:30-23, 17:48-8.4, 17:48A-7.12, 17:48E-10.1, 17B:26-9.1, 17B:27-44.2 and 26:2J-8.1; and, when a privately-insured patient seeks emergency services, an out-of-network provider must be paid a large enough amount to ensure to hold the patient is held harmless, even if it means that the payor must pay the provider its actual billed charges minus the copayments, coinsurance and deductibles that would apply to an in-network provider, *Srinivasan*, 2016 WL 3525298 (N.J. App. Div. June 29, 2016) (damages for provider's common law claims calculated based on NJ statutory and regulatory context); *see* N.J.A.C. 11:22-5.8, 11:24-5.3, 11:24-5.1, and 11:24-9.1(d).

76.    Further, patients are only responsible to pay the plan's copayments, coinsurance and deductibles at an in-network level when emergency services are rendered.

77.     In addition, the services of plaintiff were necessary to satisfy the surgical and medical needs of defendants' members and beneficiaries, as well as the legal obligations of Anthem and Highmark to provide them access to an adequate network of medical providers.

78.     Defendants also know that plaintiffs were, and are required, by New Jersey state law to treat defendants' insureds if they require emergency or related medical care, and independent of whether defendants maintain an adequate provider network. N.J.S.A. 26:2H-18.64.

79.     Defendants knew or should have known that plaintiffs provided the exclusive and/or essentially on-call surgeon available at the hospitals' emergency department to render essential surgical and related medical care.

80.     Defendants further indicated, by a course of conduct, dealings and the circumstances surrounding the relationship, to ANS and Atlantic Shore, respectively, that defendants would hold their insureds harmless and thus timely pay plaintiffs the billed charges or UCR amounts based upon what other healthcare providers of the same specialty in the same geographic area charge for the services rendered by plaintiffs, in accordance with the State Insurance Mandates.

81.     Defendants also indicated, by a course of conduct, dealings and the circumstances surrounding the relationship, to plaintiffs that they would honor, *inter alia* (a) their representations that the services rendered were pre-authorized, (b) their indications that pre-authorization was not required, and/or (c) their placement of the BCBSA inter-region logo on patient cards.

82.     Plaintiffs rendered medically necessary surgical and medical services, including emergency services, to the patients identified on the DCL, and in doing so, plaintiffs reasonably expected defendants to properly compensate plaintiffs.

83.     A reasonable person in the position of defendants would know, or reasonably should have known, that plaintiffs were performing the services expecting that defendants would pay for them appropriately.

84.     Despite indicating to plaintiffs by their respective courses of conduct, dealings and the circumstances surrounding the relationship that defendants would properly -- and timely -- reimburse plaintiffs for either its actual charges as an out-of-network provider or its UCR rates, defendants failed to do so.

85.     The failure of defendants to pay the reasonable value of services constitutes breach of the implied contract between defendants and plaintiffs.

86.     As a direct result of this breach, plaintiffs have been damaged.

**WHEREFORE**, plaintiffs demand judgment against defendants for:

   a)     Compensatory damages;
   b)     Interest (*e.g.*, pre-judgment, prompt payment law, post-judgment);
   c)     Costs of suit;
   d)     Attorneys' fees; and
   e)     Such other relief as the Court deems equitable and just.

## SECOND COUNT

### Breach of the Covenant of Good Faith & Fair Dealing

87.     Plaintiffs repeat and reallege each and every allegation set forth herein as if set forth in full herein.

88.     The law implies in every contractual relationship, including that between plaintiffs and defendants, covenants of good faith and fair dealing.  Defendants are required to act in a manner that is consistent with plaintiffs' reasonable expectations.

89.     Defendants acted with an improper motive and injured plaintiffs' rights and benefits under the contract (Count I), and so breached the covenant through acts of commission and omission described herein that are wrongful and without justification, and which denied plaintiffs the "benefit of the bargain" intended by the parties' implied contract.

90.     As a direct result of this breach, plaintiffs have been damaged.

**WHEREFORE**, plaintiffs demand judgment against defendants for:

a)     Compensatory damages;
b)     Interest (*e.g.*, pre-judgment, prompt payment law, post-judgment);
c)     Costs of suit;
d)     Attorneys' fees; and
e)     Such other relief as the Court deems equitable and just.

### THIRD COUNT

#### *Quantum Meruit*

91.     Plaintiffs repeat and reallege each and every allegation set forth herein as if set forth in full herein.

92.     Plaintiffs performed the surgical and medical services relating to the DCL in good faith.

93.     Plaintiffs reasonably expected compensation for its services, in accordance with pe-authorizations, the respective courses of dealings, and/or industry custom.

94.     Plaintiffs services were acceptance by the person to whom they are rendered. Defendants pre-approved services and/or indicated pre-approval was not unnecessary for reimbursement.

95.    Defendants have profited themselves unfairly at the expense of plaintiffs' efforts and services.

96.    At all relevant times, defendant(s) refused to pay plaintiffs correctly for the surgical and medical services plaintiffs provided to the patients identified on the DCL – contrary to the common law, statutory and regulatory obligations of defendant(s) including the State Insurance Mandates.

97.    Defendant(s) were compensated and obligated to provide access to emergency and/or pre-authorized services without regard to network status of a provider, and defendants were equitably obligated to reimburse providers for such services.

98.    To satisfy defendants' legal obligations (including network adequacy obligations), defendants required the services of plaintiffs to render the neurosurgical and medical services, including emergency care where applicable.  Plaintiffs' surgeons are the "on call" emergency surgeons at the hospitals.  In that capacity, plaintiffs' surgeons rendered emergency services to treat emergent conditions, which, if not rendered emergently may lead to death.  Thus, plaintiffs conferred a benefit on defendants, respectively.

99.    Plaintiffs did, in fact, render such services to patients.

100.    Defendants have, therefore, received and retained a benefit because of plaintiffs rendering surgical and medical services that remain grossly underpaid.  Thus, defendants have been unjustly enriched through the use of funds that earned interest or otherwise added to their profits when said money should have been paid in a timely and appropriate manner to plaintiffs.

101.    Defendants failed to compensate plaintiffs the reasonable value of the services.

102.    As a direct result, plaintiffs have suffered damages.

**WHEREFORE,** plaintiffs demand judgment against defendants for:

a)  Compensatory damages;

b)  Interest (*e.g.*, pre-judgment, prompt payment law, post-judgment);

c)  Costs of suit;

d)  Attorneys' fees; and

e)  Such other relief as the Court deems equitable and just.

## FOURTH COUNT

### Promissory Estoppel

103.  Plaintiffs repeat and reallege each and every allegation set forth herein as if set forth in full herein.

104.  Defendants made representations, or undertook conduct, that conveyed to plaintiffs that reasonable reimbursement for surgical and medical services would be afforded to patients identified on the DCL, including by pre-authorizing, advising that pre-authorization was not necessary, and/or placement of a logo[16] on a patient's identification card, but then refused proper payment when the bills were submitted by plaintiffs. *Plastic Sur'y v. Aetna*, 967 F.3d 218 (3d Cir. 2020) (citing *Mem'l Hosp. Sys. v. Northbrook Life Ins.*, 904 F.2d 236 (5th Cir. 1990)); *E. Coast Adv. Plastic Surgery v. Horizon Blue Cross Blue Sh. of N.J.*, 2018 WL 6178869 (D.N.J. Nov. 26, 2018).

105.  Prior to rendering certain subject services to the patients on the DCL, defendant(s) was contacted to confirm whether the patient had applicable health insurance, verify benefits and/or payment, for the services to be rendered on the date of service in the DCL.

---

[16]  A logo constitutes a representation supporting a duty independent of a plan. *N. Jersey Brain & Spine Ctr. v. MultiPlan*, 2018 WL 6592956, at *7-8 (D.N.J. Dec. 14, 2018); *Roberts v. Detroit Diesel*, 2007 WL 1038986, at *8 (N.J. App. Div. Apr. 9, 2007); *Lamont v. OPTA*, 2006 WL 1669019, at *2 (N.J. App. Div. June 16, 2006); *Restatement (2d) of Torts* § 525, cmt. b (1977); *accord Kemp v. AT&T*, 393 F.3d 1354, 1358-60 (11th Cir. 2004); *Shamrock Drilling v. Miller*, 32 F.3d 455, 458 (10th Cir. 1994); *U.S. v. Key*, 76 F.3d 350, 352-53 (11th Cir. 1996).

106.    Defendants indicated and conveyed that reasonable payment would be made for the services.  Reasonable payment includes the parties' course of dealings, industry custom and regulatory context (including but not limited by placement of the logo).

107.    Defendants expected, or reasonably should have expected, that the pre-authorizations would be relied upon, including by the emergency surgeons rendering the pre-authorized surgery, plaintiffs.

108.    Plaintiff did reasonably rely on the pre-authorizations of defendants.

109.    In addition, defendants' conduct violates applicable law barring retroactive withdrawal of pre-authorization, unless a provider made material misrepresentations to obtain authorization (which did not occur in this instance).

110.    Plaintiffs' reliance on the promises caused a definite and substantial detriment.

111.    Thus, plaintiffs have been damaged.

**WHEREFORE**, plaintiffs demand judgment against defendants for:

    a)    Compensatory damages;
    b)    Interest (*e.g.*, pre-judgment, prompt payment law, post-judgment);
    c)    Costs of suit;
    d)    Attorney's fees; and
    e)    Such other relief as the Court deems equitable and just.

## FIFTH COUNT

### Negligent Misrepresentation

112.    Plaintiffs repeat and reallege each and every allegation set forth herein as if set forth in full herein.

113.    Defendants negligently represented that they would provide proper reimbursement to the patients identified on the DCL, and thus pay the claims correctly, including by way of pre-authorization of surgical services, advising that pre-authorization was not

necessary, and/or placement of a logo on a patient's identification card, but then refused proper payment when the bills were submitted by plaintiffs. *Plastic Sur'y v. Aetna*, 967 F.3d 218 (3d Cir. 2020) (citing *Mem'l Hosp. Sys. v. Northbrook Life Ins.*, 904 F.2d 236 (5th Cir. 1990)); *East Coast Adv. Plastic Surgery v. Horizon Blue Cross Blue Sh. of N.J.*, 2018 WL 6178869 (D.N.J. Nov. 26, 2018).

114.    As intended by defendants, plaintiffs reasonably relied on the representations of defendants relating to the emergency care needed by and rendered to the patients on the DCL (including but not limited to the logo), and course of conduct by and between the parties, to plaintiffs' substantial detriment.

115.    The representations were false. Defendants materially misrepresented that the providers would be reasonably compensated for rendering the emergency services at issue in this case. However, after the services were rendered -- and contrary to the pre-authorizations of defendant(s) – defendant(s) improperly underpaid for the services rendered.

116.    In addition, defendants' conduct violates applicable law barring retroactive withdrawal of pre-authorization, unless a provider made material misrepresentations to obtain authorization (which did not occur in this instance).

117.    Thus, plaintiffs have been significantly damaged.

**WHEREFORE**, plaintiffs demand judgment against defendants for:

   a)    Compensatory damages;
   b)    Interest (*e.g.*, pre-judgment, prompt payment law, post-judgment);
   c)    Costs of suit;
   d)    Attorney's fees; and
   e)    Such other relief as the Court deems equitable and just

## SIXTH COUNT

### Tortious Interference with Economic Advantage

118.    Plaintiffs repeat and reallege each and every allegation set forth herein as if set forth in full herein.

119.    Plaintiffs had a reasonable expectation of economic advantage or benefit belonging or accruing to plaintiffs.

120.    Defendants knew, or reasonably should have known, of plaintiffs' expectancy of economic advantage.

121.    Defendants wrongfully interfered with plaintiffs' expectancy of economic advantage or benefit, as set forth *supra*.

122.    But for defendants' wrongful acts, it is reasonably probable that plaintiffs would have realized its economic advantage or benefit.

123.    Thus, plaintiffs have been damaged.

**WHEREFORE**, plaintiffs demand judgment against defendants for:

      a)      Compensatory damages;
      b)      Interest (*e.g.*, pre-judgment, prompt payment law, post-judgment);
      c)      Costs of suit;
      d)      Attorneys' fees; and
      e)      Such other relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Eric D. Katz, Esq. as trial counsel in the above matter.

**MAZIE SLATER KATZ & FREEMAN, LLC**
*Counsel for Plaintiff*


By: _____

ERIC D. KATZ

DATED:  October 18, 2021

## CERTIFICATION PURSUANT TO RULE 4:5-1(b)2

ERIC D. KATZ, of full age, hereby certifies that:

1      I am a partner with the law firm of Mazie Slater Katz & Freeman, LLC, counsel for plaintiff in this action.

2.      To the best of my knowledge, the matter in controversy is not the subject of any other action pending in any Court or any pending arbitration proceeding.

3.      No other actions or arbitration proceedings are contemplated by this plaintiff against the pled defendants at this time.

4.      I know of no other parties that should be joined in this action at this time, other than those as fictitious defendants that will be identified in the course of discovery.

I certify that the foregoing statements made by me are true.  I am aware that if the foregoing statements made by me are willfully false, I am subject to punishment.

By:  _____

ERIC D. KATZ

DATED:  October 18, 2021

# Civil Case Information Statement

**Case Details: MORRIS | Civil Part Docket# L-002172-21**

Case Caption: ATLANTIC NEUROSURGIC AL VS
ANTHEM, INC., D/B/A

Case Initiation Date: 10/18/2021

Attorney Name: ERIC DAVID KATZ

Firm Name: MAZIE SLATER KATZ & FREEMAN

Address: 103 EISENHOWER PKY
ROSELAND NJ 07068

Phone: 9732889898

Name of Party: PLAINTIFF : Atlantic Neurosurgical

Name of Defendant's Primary Insurance Company
(if known): None

Case Type: COMPLEX COMMERCIAL

Document Type: Complaint with Jury Demand

Jury Demand: YES - 6 JURORS

Is this a professional malpractice case?  NO

Related cases pending: NO

If yes, list docket numbers:

Do you anticipate adding any parties (arising out of same
transaction or occurrence)? NO

Are sexual abuse claims alleged by: Atlantic Neurosurgical ? NO

Are sexual abuse claims alleged by: Atlantic Shore Surgical ? NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
#### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

Do parties have a current, past, or recurrent relationship? NO

If yes, is that relationship:

Does the statute governing this case provide for payment of fees by the losing party? NO

Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:

Do you or your client need any disability accommodations? NO
    If yes, please identify the requested accommodation:

Will an interpreter be needed? NO
    If yes, for what language:

Please check off each applicable category: Putative Class Action? NO  Title 59? NO  Consumer Fraud? NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

10/18/2021
Dated

/s/ ERIC DAVID KATZ
Signed

# EXHIBIT B

**RECEIVED**

OCT 18 2021

Skanska USA Building Inc.

Eric D. Katz | Atty. No. 016791991
David M. Estes | Atty. No. 034532011
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: 973-228-9898
F: 973-228-0303
E: ekatz@mazieslater.com
*Co-Counsel for Plaintiffs*

Leslie S. Howard | Atty. No. 021531992
**COHEN HOWARD LLP**
766 Shrewsbury Ave., Suite 200
Tinton Falls, New Jersey 07724
T: 732-747-5202
F: 732-268-8362
E: lhoward@cohenhoward.com
*Co-Counsel for Plaintiff*

ATLANTIC NEUROSURGICAL
SPECIALISTS and ATLANTIC SHORE
SURGICAL ASSOCS., PC,

    Plaintiffs,

    v.

ANTHEM, INC., d/b/a Anthem Blue Cross Blue
Shield, f/k/a WellPoint, Inc.; ANTHEM INS. COS.,
INC., d/b/a Anthem Blue Cross Blue Shield;
ANTHEM LIFE INS. d/b/a Anthem Blue Cross and
Blue Shield; ANTHEM BLUE CROSS LIFE &
HEALTH INC. CO.; BLUE CROSS OF
CALIFORNIA, d/b/a Anthem Blue Cross;
COMMUNITY INS. CO., d/b/a Anthem Blue Cross
Blue Shield; ANTHEM HEALTH PLANS OF
VIRGINIA, INC., d/b/a Anthem Blue Cross and
Blue Shield; ANTHEM UM SERVS., INC., d/b/a
Anthem Blue Cross and Blue Shield; HIGHMARK
BLUE CROSS BLUE SHIELD DELAWARE, a/k/a
Highmark Health Ins. Co.; SECURITAS
SECURITY SERVS. USA, INC.; VERIZON, INC.,
a/k/a Verizon Benefits Admin., Inc., a/k/a Verizon
N.J. Inc.; SKANSKA USA INC.; SKANSKA USA
BLDG. INC.; SIGNET FIN. MGMT., LLC; CAMP
SIX, INC.; SIEMENS INDUS. INC., a/k/a Siemens
Corp., a/k/a Siemens Fin. Servs., Inc.; BAYER
CORP.; PRIME HEALTHCARE SERVS.–ST.
MICHAEL'S, LLC, d/b/a Saint Michael's Medical
Center; PRIME HEALTH-CARE SERVS.–ST.
CLARE'S, LLC, d/b/a St. Clare's Health, a/k/a St.
Clare's Hosp., Inc.; and ABC CORPS. 1-100,

    Defendants.

SUPERIOR COURT OF NEW JERSEY,
LAW DIVISION, MORRIS COUNTY

Dkt. No. MRS-L-2172-21

CBLP Action

**SUMMONS:  SKANSKA
USA BUILDING, INC. and
SKANSKA USA, INC.**

From The State of New Jersey

To The Defendant(s) Named Above:

Skanska USA Building, Inc. and/or
Skanska USA Inc.

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN 971, Trenton, New Jersey 08625. A filing fee of $135.00 for Law Division cases or $135.00 for Chancery Division cases, payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to the plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

_/s/ Michelle M. Smith_
Michelle M. Smith
Clerk of the Superior Court

Dated:  October 18, 2021

Name of Defendant to be Served:     Skanska USA Building, Inc. and/or
Skanska USA Inc.
Address of Defendant to be Served:  389 Interpace Parkway
Morris Corporate IV, 5th Fl
Parsippany, New Jersey 07054

## DEPUTY CLERKS OF THE SUPERIOR COURT

ATLANTIC COUNTY:
Lori Mooney, Clerk
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401
*LAWYER REFERRAL*
(609) 345-3444
*LEGAL SERVICES*
(609) 348-4200

BERGEN COUNTY:
Kathleen A. Donovan, Clerk
119 Justice Center
10 Main Street
Hackensack, NJ 07601-7968
*LAWYER REFERRAL*
(201) 488-0044
*LEGAL SERVICES*
(201) 487-2166

BURLINGTON COUNTY:
Edward A. Kelly, Jr., Clerk
First Fl., Courts Facility
49 Rancocas Road
Mt. Holley, NJ 08060
*LAWYER REFERRAL*
(609) 261-4862
*LEGAL SERVICES*
(609) 261-1088

CAMDEN COUNTY:
Michael S. Keating, Clerk
First Fl., Hall of Records
501 Fifth Street
Camden, NJ 08103
*LAWYER REFERRAL*
(609) 364-4520
*LEGAL SERVICES*
(609) 364-2010

CUMBERLAND COUNTY:
John G. Nardelli, Clerk
Courthouse, Direct Filing
Broad & Fayette Streets
Bridgeton, NJ 08302
*LAWYER REFERRAL*
(609) 452-5291
*LEGAL SERVICES*
(609) 451-0003/935-8024

ESSEX COUNTY:
Patricia McGarry Drake, Clerk
236 Hall of Records
465 Dr. Martin Luther King, Blvd.
Newark, NJ 07102
*LAWYER REFERRAL*
(201) 533-1779
*LEGAL SERVICES*
(201) 624-4500

GLOUCESTER COUNTY:
Joseph H. Hoffman, Clerk
First Fl., Court House
1 North Broad Street, P.O. Box 129
Woodbury, NJ 08096
*LAWYER REFERRAL*
(609) 848-4589
*LEGAL SERVICES*
(609) 848-5360

HUDSON COUNTY:
Frank E. Rodgers, Clerk
Superior Court, Civil Records Dept.
Brennan Court House
583 Newark Avenue
Jersey City, NJ 07306
*LAWYER REFERRAL*
(201) 798-2727
*LEGAL SERVICES*
(201) 792-6363

CAPE MAY COUNTY:
Angela F. Pulvino, Clerk
(Law Division Filings)
Box DN-209
Cape May Courthouse, NJ 08210
or
(General Equity Filings)
Box DN-209A
Cape May Courthouse, NJ 08210
*LAWYER REFERRAL*
(609) 463-0313
*LEGAL SERVICES*
(609) 465-3001

MERCER COUNTY:
Albert E. Driver, Jr., Clerk
P.O. Box 8068
209 South Broad Street
Trenton, NJ  08650
*LAWYER REFERRAL*
(609) 890-6200
*LEGAL SERVICES*
(609) 695-6249

MIDDLESEX COUNTY:
Herbert P. Lashomb, Clerk
Court House, East Wing
Lobby Floor/P.O. Box 2633
One Kennedy Square
New Brunswick, NJ 08903-2633
*LAWYER REFERRAL*
(908) 828-0053
*LEGAL SERVICES*
(908) 249-7600

MONMOUTH COUNTY:
Jane Clayton, Clerk
P.O. Box 1262
Court House, East Wing
Freehold, NJ  07728-1262
*LAWYER REFERRAL*
(908) 431-5544
*LEGAL SERVICES*
(908) 747-7400

HUNTERDON COUNTY:
Dorothy K. Tirpok, Clerk
Hall of Records
71 Main Street
Flemington, NJ  08822
*LAWYER REFERRAL*
(609) 788-6112
*LEGAL SERVICES*
(609) 782-7979

SOMERSET COUNTY:
R. Peter Widin, Clerk
Civil/General Equity
New Court House, 3rd Floor
P.O. Box 3000
Somerville, NJ  08876
*LAWYER REFERRAL*
(908) 685-2323
*LEGAL SERVICES*
(908) 231-7400

SUSSEX COUNTY:
Helen C. Ackerman, Clerk
Superior Court, Law Division
49 High Street
Newton, NJ  07860
*LAWYER REFERRAL*
(201) 267-5882
*LEGAL SERVICES*
(201) 383-7400

UNION COUNTY:
Walter G. Halpin, Clerk
First Floor, Court House
Elizabeth, NJ 07207
*LAWYER REFERRAL*
(908) 353-4715
*LEGAL SERVICES*
(908) 354-4340

MORRIS COUNTY:
Alfonse W. Scerbo, Clerk
CN-900
30 Schuyler Place
Morristown, NJ  07960
*LAWYER REFERRAL*
(201) 267-5882
*LEGAL SERVICES*
(201) 285-6911

OCEAN COUNTY:
M. Dean Haines, Clerk
119 Court House
CN-2191
Toms River, NJ  08754
*LAWYER REFERRAL*
(908) 240-3666
*LEGAL SERVICES*
(908) 371-2727

PASSAIC COUNTY:
William L. Kattak, Clerk
Court House

77 Hamilton Street
Paterson, NJ  07505
*LAWYER REFERRAL*
(201) 278-9223
*LEGAL SERVICES*
(201) 345-7171

SALEM COUNTY:
John W. Cawman, Clerk
92 Market Street, P.O. Box 18
Salem, NJ  08079
*LAWYER REFERRAL*
(609) 678-8363
*LEGAL SERVICES*
(609) 451-0003

WARREN COUNTY:
Terrance D. Lee, Clerk
Court House
Belvidere, NJ  07823
*LAWYER REFERRAL*
(201) 267-5882
*LEGAL SERVICES*
(201) 475-2010

# EXHIBIT C

Amber M. Spataro, Esq. (036892008)
Jennifer I. Fischer, Esq. (047432013)
**LITTLER MENDELSON P.C.**
One Newark Center, 8th Floor
Newark, New Jersey  07102
973.848.4700
Attorneys for Defendants
*Skanska USA, Inc. and Skanska USA Bldg. Inc.*

| | |
|---|---|
| ATLANTIC NEUROSURGICAL SPECIALISTS and ATLANTIC SHORE SURGICAL ASSOCS., PC,<br><br>            Plaintiffs,<br><br>vs.<br><br>ANTHEM, INC., d/b/a Anthem Blue Cross Blue Shield, f/k/a WellPoint, Inc.; ANTHEM INS. COS., INC., d/b/a Anthem Blue Cross Blue Shield; ANTHEM LIFE INS., d/b/a Anthem Blue Cross and Blue Shield; ANTHEM BLUE CROSS LIFE & HEALTH INC. CO.; BLUE CROSS OF CALIFORNIA, d/b/a Anthem Blue Cross; COMMUNITY INS. CO., d/b/a Anthem Blue Cross Blue Shield; ANTHEM HEALTH PLANS OF VIRGINIA, INC., d/b/a Anthem Blue Cross and Blue Shield; ANTHEM UM SERVS., INC., d/b/a Anthem Blue Cross and Blue Shield; HIGHMARK BLUE CROSS BLUE SHIELD DELAWARE, a/k/a Highmark Health Ins. Co.; SECURITAS SECURITY SERVS. USA, INC.; VERIZON, INC., a/k/a Verizon Benefits Admin., Inc., a/k/a Verizon N.J. Inc.; SKANSKA USA INC.; SKANSKA USA BLDG. INC.; SIGNET FIN. MGMT., LLC; CAMP SIX, INC.; SIEMENS INDUS. INC., a/k/a Siemens Corp., a/k/a Siemens Fin. Servs., Inc.; BAYER CORP.; PRIME HEALTH CARE SERVS.-ST. MICHAEL'S, LLC, d/b/a Saint Michael's Medical Center; PRIME HEAL TH-CARE SERVS.-ST. CLARE'S, LLC, d/b/a St. Clare's Health, a/k/a St. Clare's Hosp., Inc.; and ABC CORPS. l-100,<br><br>            Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MORRIS COUNTY<br><br>DOCKET NO.  MRS-L-2172-21<br><br>**NOTICE OF FILING OF NOTICE OF REMOVAL** |

To:   **Clerk, Superior Court of New Jersey**
**Law Division – Morris County**
**Morris County Courthouse**
**Washington and Court Streets**
**Morristown, NJ 07963-0910**

**SIR OR MADAM**:

    **PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, Skanska USA, Inc. and Skanska USA Building Inc., ("Defendants"), has filed a Notice of Removal of the above-captioned action in the United States District Court for the District of New Jersey.

    Attached hereto as **Exhibit A** is a copy of the Notice of Removal of this case. Upon filing of this Notice of Filing of Notice of Removal, Defendants shall give written notice thereof to plaintiffs' counsel, Eric D. Katz., Esq., Mazie Slater Katz & Freeman, LLC, 103 Eisenhower Parkway, Roseland, New Jersey 07068 and Leslie S. Howard Esq., Cohen Howard LLP, 766 Shrewsbury Ave., Suite 200, Tinton Falls, New Jersey 07724.

    Under 28 U.S.C. §1446(d), the filing of the Notice of Removal in the United States District Court for the District of New Jersey, together with the filing of a copy of the Notice of Removal with this Court, effectuates the removal of this action, and this Court may proceed no further unless and until the action is remanded.

Dated: November 17, 2021          Respectfully submitted,


                            */s/ Jennifer I. Fischer*
                            Amber M. Spataro, Esq.
                            Jennifer I. Fischer, Esq.
                            LITTLER MENDELSON P.C.

                            Attorneys for Defendants
                            *Skanska USA, Inc. and Skanska USA Building Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 17, 2021, I caused a copy of the foregoing Notice of Filing of Notice of Removal to be served on counsel for Plaintiff Atlantic Neurosurgical Specialists and Atlantic Shore Surgical Associates, PC via Federal Express to:

Eric D. Katz, Esq.
David M. Estes, Esq.
MAZIE SLATER KATZ& FREEMAN, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068
*Co-Counsel for Plaintiffs*

Leslie S, Howard, Esq.
COHEN HOWARD LLP
766 Shrewsbury Ave., Suite 200
Tinton Falls, New Jersey 07724
*Co-Counsel for Plaintiffs*

_____
*/s/ Jennifer I. Fischer*
Jennifer I. Fischer

Dated:  November 17, 2021

3